Opinion by Judge TALLMAN; Dissent by Judge W. FLETCHER.
OPINION
TALLMAN, Circuit Judge:
Defendant-Appellant Baldemar Landa pled guilty to violating the Controlled Substances Act and received the mandatory minimum sentence of five years. Landa argues that in computing his sentence, the district court improperly calculated his criminal history score by counting his pri- or conviction under California Vehicle Code section 23140(a), which makes it unlawful for a person younger than twenty-one years of age to drive with a blood-alcohol content (BAC) of .05% or greater.
The district court determined that Landa’s conviction was similar to a conviction for driving while intoxicated or under the influence and thus counted as a criminal history point pursuant to Note 5 of United States Sentencing Guidelines Manual (U.S.S.G.) § 4A1.2.[1] Landa’s position is that his violation was actually more like a juvenile status offense, which is never counted under § 4A1.2(c)(2). Applying a “common sense” interpretation to the guidelines and the statute at issue, we conclude that a violation of section 23140(a) is not similar to a juvenile status offense and was properly counted in the calculation of Landa’s criminal history score.
I
In August 2003, a little more than one month after Landa’s eighteenth birthday, California Highway Patrol traffic officers arrested him on suspicion of driving under the influence in violation of California Vehicle Code sections 23152(a) and (b).[2] *835 Landa provided two Breathalyzer tests, which reflected blood-alcohol levels of .086% and .087%. Landa pled nolo contendere to a violation of California Vehicle Code section 23140(a), a lesser charge classified as an infraction, which penalizes driving with a blood-alcohol content of .05% or greater if the driver is younger than twenty-one years of age. He was sentenced to eighteen months of probation with the option of terminating his probation early by paying a $655 fee. Landa finished paying the fee more than one year later, during his probationary period.
Six years thereafter, Landa was arrested in Sunnyvale, California, on suspicion of violating the federal Controlled Substances Act. He pled guilty to one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and (b)(l)(B)(ii); one count of possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(l)(B)(ii); and aiding and abetting, 18 U.S.C. § 2. At his sentencing hearing, the district court considered whether Landa qualified for “safety valve” relief through 18 U.S.C. § 3553(f). Under that provision, the statutory minimum sentence for violations of certain provisions of the Controlled Substances Act does not apply if the defendant meets five requirements.
Landa’s argument concerns the first requirement: that the defendant does not have more than one criminal history point as determined by the sentencing guidelines. He does not challenge the inclusion of one criminal history point for his 2006 misdemeanor conviction of driving with a suspended license. He does, however, challenge the inclusion of a criminal history point for his conviction under California Vehicle Code section 23140(a) prohibiting “a person under the age of 21 years who has 0.05 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.”
Landa’s argument turns on whether section 23140(a) is similar to a “juvenile status offense.” The guidelines specify that “juvenile status offenses and truancy” and “offenses similar to them, by whatever name they are known, are never counted.” § 4A1.2(c)(2) (emphasis added). However, Note 5, an Application Note in the commentary section of § 4A1.2, further instructs that “[cjonvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(e).” U.S.S.G. § 4A1.2 cmt. n.5 (emphasis added).
The district court held that Landa’s conviction was not similar to a juvenile[3] status offense, but was instead similar to a conviction for driving under the influence or while intoxicated. Accordingly, the court counted the conviction and denied him “safety valve” relief from the five-year mandatory minimum. Landa appeals.
II
We review de novo the district court’s inclusion of a prior conviction in the Sentencing Guidelines criminal history calculation. United States v. Grob, 625 F.3d 1209, 1212-13 (9th Cir.2010) (citing United States v. Bays, 589 F.3d 1035, 1037 (9th Cir.2009)).
*836 III
Prior to 2007, we applied different approaches to determining whether an offense not listed under U.S.S.G. § 4A1.2(c) is “similar to” a listed offense. See United States v. Sandoval, 152 F.3d 1190, 1192 (9th Cir.1998) (observing that “[t]his court has taken two different approaches to determining whether an offense is ‘similar to’ those listed in § 4A1.2(c)(2)”); see also Grob, 625 F.3d at 1213 (“Before 2007, there was disagreement among the circuits (and even within our own circuit) about what test courts should apply in this context.”). Then in 2007, the Sentencing Commission provided clearer guidance. Application Note 12 to § 4A1.2 states:
In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (Hi) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.
U.S.S.G. § 4A1.2 cmt. n.12 (2007). We have since embraced this “common sense” approach. Grob, 625 F.3d at 1214.
Landa argues that his driving conviction under section 23140(a) is “similar to” a juvenile status offense and that the district court erred in concluding that the conviction was similar to a conviction for driving while intoxicated or under the influence. The Government counters that Landa’s conviction is not similar to a juvenile status offense, and is, in fact, a conviction for driving while intoxicated or under the influence or — at a minimum — similar to such an offense.
The “juvenile status offense” exception is listed in the text of the guidelines, while the “driving while intoxicated or under the influence” provision is included in the commentary interpreting those guidelines. Because Note 5 states that convictions similar to a “driving while intoxicated or under the influence” offense are counted and the text of (e)(2) states that juvenile status offenses are never counted, a potential conflict exists between the text and the commentary. In such circumstances, the text of the guidelines governs. Stinson v. United States, 508 U.S. 36, 43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). That means that if Landa’s conviction is similar to a juvenile status offense, it is not counted, regardless of whether it is also similar to a “driving while intoxicated or under the influence” offense. We therefore begin by determining whether Landa’s offense is “similar to” a juvenile status offense.
A
Landa — an adult now and at the time of his arrest' — argues that his conviction under California’s vehicle code is similar to a juvenile status offense because section 23140 penalizes conduct of persons younger than twenty-one for conduct that, if not for the person’s age, would otherwise be legal. Landa suggests that a juvenile status offense is “a non-serious offense that is ... illegal only because of the offender’s age being under 18.” He notes that other circuits have recognized as “non-serious” juvenile status offenses the purchasing of alcohol or cigarettes. See, e.g., United States v. Ward, 71 F.3d 262, 263 (7th Cir.1995) (describing the purchase of alcohol or cigarettes as conduct that is unlawful “solely by virtue of the defendant’s juvenile status”). Such activities, *837 Landa claims, are similar to driving with a BAC of at least .05% in that none of the activities are serious, and they are illegal only because the actor is a juvenile.
Landa’s argument hinges in large part on the definition of “serious.” He argues that under the second prong of Note 12’s “common sense” test, we should consider only the degree of punishment in determining the seriousness of his offense and not the dangerous nature of the underlying conduct. He argues that because imprisonment was not an available punishment for Landa’s violation, his violation was not serious, making it similar to a juvenile status offense.
One significant problem with this argument — and the dissent’s analysis — is that it confuses two separate inquiries. It is true that Note 12 instructs us to compare sentences imposed to help determine whether an offense is serious. But it is also true that Note 12 requires us to consider the “elements” of the two offenses and, as we explain below, seriousness is an element of a “juvenile status offense.”
Note 12 does not define “juvenile status offense” or what it means to be “serious” for purposes of that term. To determine what constitutes a juvenile status offense for purposes of § 4A1.2(c), and whether Landa’s conviction is “non-serious” in the same way that a juvenile status offense is “non-serious,” we look not to Note 12, but to federal law. United States v. Kemp, 938 F.2d 1020, 1023-24 (9th Cir.1991); see also United States v. Martinez, 905 F.2d 251, 253 (9th Cir.1990). Once the term is defined, we consider whether it encompasses the conduct underlying Landa’s offense. Grob, 625 F.3d at 1217.
We have not yet defined “juvenile status offense.” Doing so, as the Sixth Circuit has noted, is particularly difficult because the term encompasses not a single type of offense, but a group of offenses. See United States v. Cole, 418 F.3d 592, 599 (6th Cir.2005). Black’s Law Dictionary defines a status offense as “a minor’s violation of the juvenile code by doing some act that would not be considered illegal if an adult did it, but that indicates that the minor is beyond parental control.” Black’s Law Dictionary, 1188 (9th ed.2009). Examples include running away from home, truancy, and incorrigibility. Id. Other circuits considering the definition in the context of § 4A1.2(c) seem to have recognized that the term “juvenile status offense” depends on both the “age” of the defendant and the “non-serious” nature of the offense.
For example, the Sixth Circuit defines a juvenile status offense as “an offense which is illegal only because of the offender’s age (under eighteen) and which is not serious.” Cole, 418 F.3d at 599. To help gauge whether an offense is “serious,” the court in Cole considered the severity of available punishments. Id. at 600 n. 4. In deciding that being a minor in possession was similar to a juvenile status offense where the defendant was nineteen years old at the time of the violation, the Sixth Circuit observed that “[a] jail sentence is not available under Michigan law for a minor in possession of alcohol conviction” except in limited circumstances. Id.
Considering whether being a minor in possession of a gun was a juvenile status offense, the Seventh Circuit held that “[t]he obvious meaning [of juvenile status offense] is conduct that would be lawful for an adult and is unlawful solely by virtue of the defendant’s juvenile status.” Ward, 71 F.3d at 263. In assessing whether an offense falls into that category, the court observed that it may be necessary to consider the “gravity” of the underlying conduct. Id. at 264 (noting that mere underage possession of a gun may be a juvenile status offense, but using that gun in con *838 nection with the commission of an adult felony would not be).
The First Circuit has concluded that a juvenile status offense must have three elements: (1) the defendant was younger than eighteen years of age, (2) the conduct would have been lawful if engaged in by an adult, and (3) the offense is not serious. United States v. Correa, 114 F.3d 314, 318-19 (1st Cir.1997). The court determines whether an offense is “serious” by appraising the “gravity” of a given crime and making what is “quintessentially a judgment call.” Id. at 319. In Correa, the court found it significant that the illustrations of exempted offenses supplied by the Sentencing Commission in § 4A1.2(c) (e.g., truancy, hitchhiking, loitering, vagrancy, and minor traffic infractions) “all possess a bland quality that helps to distinguish them from more substantial transgressions.” Id.
In adopting that approach as its own, the Eighth Circuit reasoned that it “fits well with the goals of ‘certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records ... while maintaining ... flexibility.’ ” United States v. Webb, 218 F.3d 877, 880 (8th Cir.2000) (quoting 28 U.S.C. § 991(b)(1)(B)). Rejecting the argument that being a minor in possession of alcohol is a juvenile status offense, the Eighth Circuit noted that juvenile status offenses tend to punish offenders based solely on their current state or status while prohibitory offenses “involve a defendant who affirmatively violates a regulatory scheme.” Id. at 881. The court observed that offenses such as “minor in possession” represent “a violation of a specific liquor control law, rather than being merely reflective of a status crime such as juvenile delinquency or an offense against the public peace.” Id.
We agree with our sister circuits and hold that to qualify as a juvenile status offense, an offense must be (1) committed by a person younger than eighteen years of age, (2) involve conduct that would be lawful if engaged in by an adult, and (3) be non-serious in nature. We compare those elements to Landa’s offense to determine whether they are similar. While Landa was an adult at the time of his arrest, he was underage for purposes of California’s drinking laws, which set the minimum age for legal acquisition of alcohol at twenty-one. See Cal. Const, art. XX, § 22. Furthermore, section 23140 makes it illegal to drive with a BAC as low as .05%, conduct that is arguably legal for most adults (although depending on the facts could also be evidence of reckless driving in violation of California Vehicle Code section 23103(a)).
Those two elements strike us as similar to the first two elements of a juvenile status offense. Therefore, our inquiry into the elements of the offenses focuses mostly on their seriousness. See Grob, 625 F.3d at 1216 (noting that “a comparison of the elements of the prior offense with the elements of the exempted offense shows both similarity and difference” (quotation and markings omitted)). In measuring “seriousness,” we look at more than just the severity of punishment available; like our sister circuits, we also consider the conduct underlying the offense. See United States v. Lichtenberg, 631 F.3d 1021, 1026 (9th Cir.2011) (“The distinction between the two crimes is reflected in [the defendant’s actual offense conduct.” (citing Grob, 625 F.3d at 1217)).
It is obvious to us that driving a vehicle after drinking alcohol presents entirely different risks than the act of purchasing alcohol or cigarettes, running away from home, truancy, or incorrigibility. This distinction is underscored by the fact *839 that a conviction under California’s vehicular manslaughter laws may be predicated on a violation of section 23140. See CaLPenal Code § 191.5 (“Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140 ... ”). Thus, California lawmakers have expressly recognized that driving in violation of section 23140 can and sometimes does lead directly to the death of others.
In deciding that a BAC of .05% was adequate to support a conviction for vehicular manslaughter “while intoxicated,” state lawmakers noted the alarming statistic that “[t]he alcohol involvement rate for young drivers, based on the total licensed driver population, is about twice that of the over 21 age driver,” and that, despite the effectiveness of tough drinking laws, “young people under age 21 are still greatly over-represented in alcohol-related crashes and fatalities.” Bill Analysis, AB 321: Hearing Before the Assemb. Comm, on Pub. Safety, 1993-1994 Reg. Sess., 1-2 (as amended March 3,1994).
To support his position that his conviction was not serious, Landa cites Cole, 418 F.3d 592, where, as noted above, the Sixth Circuit held that a nineteen-year-old’s conviction for possessing alcohol was similar to a juvenile offense in part because the offense was not “serious.” Id. at 599-600. But, aside from the fact that Cole seems to have placed more weight on the severity of available punishments than we do, Cole is virtually inapplicable to the facts here, where Landa was convicted for driving a vehicle after consuming alcohol and having a BAC of more than .05%.
The California legislature did not impose a more severe BAC restriction on drivers younger than twenty-one merely because they are too young to drink — that’s the purpose of drinking laws. The legislature imposed this special restriction on driving because — like commercial vehicle drivers, who are prohibited from driving with a BAC of .04% under section 23152(d) of the vehicle code — young drivers pose special risks. See, e.g., People v. Goslar, 70 Cal.App.4th 270, 278, 82 Cal.Rptr.2d 558 (Cal.Ct.App.1999) (observing that in amending the vehicular homicide laws to incorporate section 23140, the California legislature considered the fact that “younger drivers, less experienced in driving and in the use of alcoholic beverages, were more likely to be involved in accidents at lower blood-alcohol levels than older drivers”); see also Senate Floor Analyses, SB 1295, Reg. Sess.1993-1994, 2 (“Alcohol is by far the most frequently found drug in fatally injured drivers. No other single drug — not even all other drugs combined — comes close to alcohol. And, of course, young drivers are a major problem in this area.” (statement of the Personal Insurance Federation)); see also Cal. Veh.Code § 23510(a) (finding that “[yjoung drivers often do not realize the consequences of drinking alcohol or ingesting any other drugs, whether legal or not, and driving a motor vehicle while their physical capabilities to drive safely are impaired by those substances”).
As for Landa’s argument that the punishment imposed on him was not serious, the guidelines themselves suggest that it was severe enough to distinguish it from a “minor” offense. In § 4A1.2, subsection (c)(1) distinguishes between certain minor offenses that are not counted and offenses where the sentence imposed was a term of probation of more than one year or a term of imprisonment of at least thirty days. While “juvenile status offense” is not listed in subsection (c)(1), the guidelines clearly recognize that certain types of petty offenses are only counted where the defen *840 dant received a sentence of more than one year’s probation, as occurred here.
Landa argues that because juvenile status offenses are never counted under the plain language of subsection (c)(2), it is irrelevant that subsection (c)(1) recognizes that sentences involving probationary periods of more than one year should be counted. Landa would be correct if we were trying to determine whether a juvenile status offense with a probationary period of eighteen months should be counted. But that is not our task. It is uncontested that Landa is not a juvenile and was not convicted of a juvenile status offense. The question before us is whether his conviction is “similar” to such an offense. To answer that question, it is appropriate to consider the language in (c)(1) to help gauge whether the punishment imposed on Landa indicates a serious offense or whether, instead, it is an offense of “minor significance to the goals of sentencing.” Martinez, 905 F.2d at 253 (9th Cir.1990). Landa was sentenced to probation for eighteen months, terminable upon payment of a fee, which he paid more than one year into his probationary period. His sentence is more suggestive of a serious offense than a minor offense. See § 4A1.2(e)(l).
Neither does the fact that a conviction under section 23140 is an infraction that results in probation instead of imprisonment establish that it is a non-serious offense. See Sandoval, 152 F.3d at 1192-93 (finding that petty theft is not “similar to” the offenses listed in § 4A1.2(c)(2) even though it “was charged as an infraction, resulting in a relatively light penalty”).
We also think it relevant that many of the consequences flowing from a conviction under section 23140 are exactly the same as those assigned to “driving under the influence” sections of the vehicle code. See, e.g., Cal. Veh.Code § 1808 (specifying that conviction records for violations of section 23140, 23152 (driving under the influence), or 23153 (driving under the influence and causing bodily injury to another person) are available for ten years). Section 14602.8 of the vehicle code also allows for immediate removal and seizure of vehicles driven by persons suspected of being under the influence of alcohol or drugs if those persons have been convicted of violating section 23140, 23152, or 23153. Cal. Veh.Code § 14602.8(a)(1). Additionally, section 13353 of the code allows the State to suspend a person’s privilege to operate a motor vehicle for up to three years where the person refuses to complete a chemical test, is suspected of drinking and driving, and has a prior conviction under section 23140, 23152, or 23153. Cal. Veh.Code § 13353(a). We also note that the penalties for violations of 23140, 23152, and 23153 are all included in a division of the vehicle code entitled “Sentencing for Driving While Under the Influence,” Cal. Veh.Code Div. 11.5, and that all three offenses share as an available punishment completion of an educational “driving under the influence” program. See Cal. Veh. Code §§ 23502(a), 23538(b), 23556(b)(1).
That California’s lawmakers so frequently lump together consequences for driving under the influence and violations of section 23140 suggests that the legislature perceives a violation of that section as more serious than a juvenile status offense. It also suggests that section 23140 is not a mere status offense, but part of the state’s scheme for regulating driving under the influence. See also United States v. Gomez-Leon, 545 F.3d 777, 785 (9th Cir.2008) (recognizing that under California law, violating section 23140 is equivalent to “driving a vehicle while under the influence of drugs or alcohol in violation of the California vehicle code”); Review of 1986 Selected California Legislation, 18 *841 Pac. L.J. 433, 738-39 (explaining that enactment of section 23140 and other sections of the vehicle code “expands existing law [which prohibits any person from driving a vehicle while under the influence of alcohol or with a specified blood-alcohol level] by prohibiting a minor from driving a vehicle with a blood alcohol level of 0.05% or more, by weight” (emphasis added)).
Turning to culpability and whether Landa’s violation of section 23140 predicts future criminality, we overlook for the moment that in order to violate section 23140, a person has already broken two laws: drinking alcohol under age and driving with a BAC of at least .05%. We think it telling that Landa’s conduct would have been illegal regardless of his age. See Ward, 71 F.3d at 264 (noting that it is proper to consider the defendant’s underlying conduct where the offense in question “can be committed by conduct that varies from the trivial to the grave [because] the significance of the prior conviction as a predictor of recidivist potential— the primary reason for using criminal history to increase a defendant’s sentence ... cannot be determined” (internal citations omitted)); see also Grob, 625 F.3d at 1217 (considering “the circumstances present” to determine whether a prior conviction suggested a likelihood of recurring criminal conduct).
Landa was convicted of driving with a BAC of at least .05%. His Breathalyzer tests revealed that he actually drove with a BAC of well over .08%. Even if we agreed that illegally consuming alcohol and then driving with a BAC of .05% was not predictive of future criminality, the fact that Landa far exceeded this limit supports our conclusion that the culpability of his actions are not similar to a juvenile status offense and that his conduct is indicative of future criminal behavior.
The fact that, with section 23140, state lawmakers attempted to address a public safety threat by imposing more severe restrictions on a known risk group does not minimize the serious nature of the targeted activity. If anything, it underscores it. A violation of section 23140 amounts to significantly more than a “relatively minor breach of the peace.” See Grob, 625 F.3d at 1216. Getting behind the wheel of a car and taking to the road after consuming alcohol is more serious than running away from home, truancy, incorrigibility, or the purchasing of alcohol or cigarettes. We conclude that Landa’s conduct lacks the “bland quality” of other offenses listed in § 4A1.2(c)(2) (i.e., fish and game violations, hitchhiking, local ordinance violations, loitering, minor traffic infractions, public intoxication, and vagrancy) and rises to the level of a substantial transgression.
We hold that Landa’s conviction is not similar to a juvenile status offense for purposes of § 4A1.2(c)(2). Landa does not argue that his offense falls under any other exception. Therefore, the district court properly counted the conviction in calculating Landa’s criminal history score. See U.S.S.G. § 4A1.2(c) (stating that “[sentences for misdemeanor and petty offenses are counted” unless an exception listed in subsection (c)(1) or subsection (c)(2) applies).
IV
We are not convinced that Landa’s violation of section 23140 is similar to a juvenile status offense. Indeed, it would defy common sense to conclude that a law designed to prevent young and inexperienced drivers from taking to the roads after consuming alcohol is similar to a juvenile status offense simply because it properly targets the most dangerous demographic group.[4]
*842 Because Landa does not argue that his offense falls under any other applicable exception, our task is complete.[5] In light of our disposition that Landa cannot meet all five requirements for “safety valve” relief, we need not decide whether his failure to timely debrief before sentencing also renders him ineligible. AFFIRMED.

. Unless otherwise indicated, all references to the United States Sentencing Guidelines Manual are to the November 1, 2008 version thereof.

. Section 23152(a) makes it unlawful for “any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and *835 drug, to drive a vehicle.” Section 23152(b) makes it unlawful for "any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.”

. We cannot ignore the fact that Landa was not a juvenile at the time that California Highway Patrol officers arrested him. He had recently celebrated his eighteenth birthday. Under California law, he was an adult offender. Cal. Fam.Code §§ 6500, 6501.

. We do not foreclose the possibility that other offenses committed by those older than eighteen years may be "similar to” a juvenile status offense. We merely disagree with the dissent, for the reasons we have articulated, that "[t]he only difference between Landa's offense and true juvenile status offense is that the age threshold is 21 rather than 18.” See Dissent at 846.

. The dissent states that in summarizing the district court’s approach and the Government’s arguments we somehow suggest that we agree with the Government that Landa’s violation must be counted because it is a driving-under-the-influence offense within the meaning of Application Note 5. See Dissent at 847. To be clear, we do not reach that question because, as we explain supra, the only exception the appellant argues applies is the "similar to a juvenile status offense” exception in the Guidelines themselves, and that exception trumps Application Note 5. If Landa’s offense is similar to a juvenile status offense, it is not counted. If it is not similar to a juvenile status offense, it is. The lengthy discourse by the dissent regarding Application Note 5 is simply irrelevant.